UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO. 10-cr-20202-PDM-VMM
                              HON. PAUL D. BORMAN

vs.

STEPHEN HILL, et al.,

        Defendant(s).

___

## DEFENDANT STEPHEN HILL'S SENTENCING MEMORANDUM

NOW COMES defendant, Stephen Hill, by and through his counsel, Brian M. Legghio, and moves this Honorable Court to impose a custodial sentence of not more than thirty six (36) months, and in support Defendant submits this Sentencing Memorandum and attached Letters of Support.

Stephen Hill accepts full responsibility for his actions and is deeply sorry for his misconduct. Mr. Hill realizes that he must face the consequences of his actions, and as evidenced by his guilty plea, and his extensive cooperation, including testimony in open Court, he is prepared to do so.

The five (5) factors enumerated in 18 USC §3553(a) support a maximum sentence of thirty six (36) months.

After *U.S. v. Booker*, 543 U.S. 220 (2005), the Court must consider, without preferring any single one factor the seven (7) factors listed in 18 U.S.C. §3553(a) to meet the overarching statutory charge to impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to

provide the defendant with needed training, medical care or other correctional treatment. After *Booker*, the Guidelines are to be "respectfully considered", but no one factor is to be given more or less weight than any other §3533(a) factor to be taken into account in arriving at an appropriate sentence. *Kimbrough v. U.S.*, 128 S.Ct. 558, 570 (2007); *Gall v. U.S.*, 128 S.Ct. 586, 596-97, 602 (2007).

The Court has before it in the Presentence Report, this Sentencing Memorandum and letters of support and exhibits, ample mitigating information that properly considered under §3553, supports a sentence of no more than thirty six (36) months incarceration.

### A. The History and Characteristics of Stephen Hill.

Stephen Hill was born and raised in Texas. His mother, who still resides in San Antonio, Texas, is a retired schoolteacher. Mr. Hill's father designed radar systems for government aircraft and was employed as a civilian at the Kelly Air Force Base in Texas. Mrs. Hill is seventy six (76) years old and suffers from schizophrenia. Mr. Hill's father passed away in 2008.

Growing up in the 1950's in Texas, Mr. Hill attended all black schools until high school. Mr. Hill's father raised him in a regimented military style. Clearly, Mr. Hill's letter to this Court provides a glimpse into the style of his upbringing under his father's tutelage.

Mr. Hill graduated from the University of Texas at El Paso in 1972. Since that time, Mr. Hill has devoted his professional career to developing a keen working knowledge of risk management, specializing in public-municipal risk management. In 1972, Mr. Hill became introduced to the concept of risk management and insured risk

when he accepted a position as the second African-American hired as a marketing representative for Aetna Life and Casualty Insurance Company.

In 1996, he accepted a position as a Risk Manager for Cook County, Illinois. Mr. Hill subsequently accepted the Executive Director position of Risk Management for the Detroit Public Schools in 2001. Since 2001, Mr. Hill devoted himself to improving the Detroit Public School System and its risk management practices. In 2005, Mr. Hill was named the, "2005 Public Risk Manager of the Year" by the International Professional Management Association PRIMA (Public Risk Managers Association).

Since his indictment, Mr. Hill has accepted a Risk Manager position at the nearly all-white First Baptist Church of Hammond, Indiana.

Mark Duff, Director of Human Resources for the first Baptist Church of Hammond, Indiana, offered an intuitive letter of support on behalf of Mr. Hill. The first page of Mr. Duff's letter is a recitation of his gratefulness that Mr. Hill came to the First Baptist Church and provided experienced risk management changes which financially benefited the church. However, it is the second page of the letter where Mr. Duff reveals the personal qualities of Mr. Hill, which should be helpful to this Court in its individualized formulation of an appropriate and reasonable sentence. Mr. Duff writes:

> *"After spending hundreds of hours this past year with Mr. Hill, I have learned that he is a man who wants to make a difference with his life. He has a love for God and the desire to use what he has learned throughout his life to help the Lord's work. He is a sincere man.*
> *He is an honest man. He is a family man.*
>
> *As an Assistant Pastor of our church, I am well aware that there are no perfect people in this world. I also understand that when the laws are broken there are consequences that must be paid.* **I am also very thankful that I had key people in my life who have shown mercy when I needed it most"**. [Emphasis added].

Mr. Duff gave considerable thought to the second page of his letter. It is written with clarity of mind and thoughtfulness of heart. It is difficult to judge Mr. Hill exclusively upon his transgressions evidenced in this case.

Pastor Jack Schaap also provided keen insights of Mr. Hill's character:

> *He [Mr. Hill] has allowed me to become his Pastor, which has opened his heart to me and allowed me to see somewhat behind the façade that all men project in public. What I have seen is consistent with the earnestness he has demonstrated that provoked us to hire him. He has shared with me both his journey of faith, as well as, his personal struggles and disappointments. His biography is that of a man who has, through the years, felt that with enough determination and excellent education, and a belief that one man can make a difference, he would try to be that man and make a difference in his world.*

Obviously, Pastor Schaap and Mr. Duff have come to know Mr. Hill on an intimate, human level. Their insights and studied judgment of Mr. Hill's person are intended to inform this Court, fully, of the person it must sentence.

Ms. Denise Johnson who has known Mr. Hill for approximately ten (10) years contributed her insights into the person and the man Mr. Hill is; as a resident of the City of Detroit, in her own words, *"... the last thing that I would try to do is minimize the seriousness of these charges"*, yet she implored the Court to look at this man's heart as well, when deciding what punishment will be handed down.

Ms. Johnson writes of Mr. Hill:

> *"Even in light of his poor use of judgment, he is a man of great honor. This is sadly an aberration of Mr. Hill's innate good character. I have known Mr. Hill to value transparency in dealing with others. He has been a fighter for the "underdog".*

Mr. Gibson calls Mr. Hill a friend and a mentor. Mr. Hill mentored Mr. Gibson in risk management and insurance practices. Mr. Gibson's personal insights of Mr. Hill

4

should also be of assistance to this Court in understanding his true character and his most unfortunate fall from grace:

> *"Mr. Hill and I have known each other for the past six years and I can't say enough about how he has mentored me with honesty and a genuine interest to see me succeed never asking for anything in return. On a personal note, he also extended himself to help me through a very rough time in my life by encouraging me and embracing me like a son. The community will not be the same without Mr. Stephen Hill: a person of integrity, honesty and genuine interest to help others, a leader, and a hard-working family man who has extended himself to others selflessly."*

These letters of studied insight, based upon years of experience with Mr. Hill, can hopefully can assist this Court in its formulation of a fair, reasonable and individualized sentence that meets all of the sentencing criteria of 18 USC §3553.

### B. Mr. Hill's Extensive Cooperation - Assistance that Contributed Significantly to the Decisions of Rational Co-Defendants to Plead Guilty – Warrants a Departure to a Sentence of Thirty Six (36) Months.

Because of Mr. Hill's substantial assistance, the Government will be requesting that this Court impose a sentence below the advisory guideline range. In fact, the Plea Agreement sets forth the agreement of parties, that the Government will make a motion for a downward departure, assuming the cooperation obligation was fulfilled, and would recommend that Mr. Hill be sentenced to a term of fifty four (54) months.

18 U.S.C. § 3553(e) provides, in pertinent part, as follows:

> *Upon motion of the Government, the Court shall have the authority to impose a sentence below a level established by statute as a minimum sentence to reflect the defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.*

Section 5K1.1 of the Sentencing Guidelines sets forth guidelines and criteria that the Court may employ in its "...*evaluation of the significance and usefulness of the defendant's assistance, taking into consideration of the Government's evaluation of the*

5

*assistance rendered...the nature and extent of defendant's assistance...the timing of the defendant's assistance."*

Applying the factors set forth in §5K1.1, counsel submits that this Court should grant the Government's downward departure motion and factor the departure into a fair, reasonable sentence. Moreover, Defendant submits that although the United States has agreed to recommend a sentence of fifty four (54) months, Defendant requests that this Court not be limited by the Government's recommendation.

Mr. Hill's cooperation, its value, its timeliness, and the time and the consistent efforts that Mr. Hill provided to the Government went above and beyond the Government's expectations. On numerous occasions, Mr. Hill travelled from Hammond, Indiana (at his own expense), met with Federal agents and representatives of the United States Attorney's Office, and provided extensive, thorough debriefings regarding his knowledge, his activity, the activities of himself and all other individuals who were indicted.

Mr. Hill's agreement to testify against other individuals certainly contributed to the speedy guilty pleas of other, rational Co-Defendants. Further, Mr. Hill traveled to Detroit on several occasions to prepare for his anticipated trial testimony. Mr. Hill then appeared in open Court and testified at Co-Defendant Sherry Washington's trial. Undoubtedly, Mr. Hill's trial testimony assisted in the rightful conviction of Sherry Washington.

To date, everyone charged in this case has pled guilty or has been found guilty after Mr. Hill testified.

6

### C. The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct; 18 USC §3553(a)(6).

Comparing cases, and thus in people's lives and their transgressions, is tricky business. Section 3553, nonetheless, instructs that such comparisons are appropriate and necessary to avoid unwarranted sentencing disparities. In considering similarly situated defendants, several recent Detroit public official bribery cases are *apropos* for comparison purposes.

In *United States vs. Herbert Worthy*, the Government charged Mr. Worthy, former Mayor of the City of Ecorse, with approving and submitting invoices to the City Council with a total value of more than $3,000,000.00, which invoices included false and fraudulent inflated services.

Mr. Worthy plead guilty to Conspiracy to Commit Bribery for his central role in shepherding more than $3,000.000.00 in fraudulent invoices to the City Council of Ecorse. Mr. Worthy was sentenced to eighteen (18) months in federal prison. Criminal case number 09-20449-02.

In *United States v Marc Andre Cunningham*, the Government charged Mr. Cunningham with conspiracy to commit bribery. Mr. Cunningham was a consultant seeking to obtain a $15,000,000.00 investment from the City of Detroit Police and Fire Retirement System and $15,000,000.00 investment from the City of Detroit's General Retirement System. Mr. Cunningham bribed a City of Detroit official in order to ensure that he received the over $30,000,000.00 investments from the two retirement systems. Mr. Cunningham received over $300,000.00 in unlawful commissions by obtaining, through bribery, the over $30,000,000.00 in pension funds on behalf of an investment firm.

Ms. Conyers' unbridled and uncontrollable rein of bribery throughout the City of Detroit netted her a sentence of thirty six (36) months imprisonment. Mr. Jackson was sentenced to thirty seven (37) months.

Although every case can be differentiated from another, the factual differences between the above cited cases and Steven Hill's case are not significant for sentencing comparison purposes. The totality of criminal circumstances of the above City of Detroit employee/agent bribery cases is equal or more egregious than the circumstances of Stephen Hill's case. Yet, each of the above individuals received far less custodial sentences than the guideline exposure Mr. Hill faces, or even the Government's recommended sentence of fifty four (54) months.

The comparison of Mr. Hill's case to the above cases is appropriate and indispensable in formulating a fair, reasonable sentence for Mr. Hill.[1]

### D. Waiver of Fines and Costs

As the Presentence Investigative Report (PSIR) reflects (pp. 16, ¶83), Mr. Hill's net worth is a negative twenty six thousand sixty one ($26,061.00) dollars. Based upon his own income, Mr. Hill uses all of his meager wages to support his living expenses. Although he has a loving and supportive wife, she has not devoted her earnings toward his legal predicament, which explains why he has appointed counsel. For these reasons, we are respectfully requesting the Court to waive fines and costs.

### E. Waiver of Interest on Restitution

By statute, Mr. Hill will be required to pay interest, "on any fine or restitution of more than $2,500.00, unless the fine is paid in full before the 15th day after the date of

---

[1] There are numerous other City bribery cases, mostly resulting in average sentences of thirty six (36) months or less.

9

the judgment." 18 USC §3612(f)(1). In the instant case, it can be reasonably anticipated that the Court will impose a substantial statutory restitution amount which Mr. Hill will be required to pay. In view of Mr. Hill's age, negative net worth and the anticipated civil judgments and civil lawsuits pending against him, even if this Court imposes these significant restitution amounts, it is unlikely that Mr. Hill will be able to retire that indebtedness in his lifetime.

Based upon the obviousness of Mr. Hill's unfortunate financial circumstances, Counsel requests that this Court suspend the imposition of interest on restitution. Pursuant to 18 USC §3612(f)(3)(a), this Court is statutorily empowered to waive imposition of interest on restitution, "if the Court determines that the Defendant does not have the ability to pay interest…". Accordingly, Mr. Hill requests that this Court waive the requirement of interest on restitution.

## CONCLUSION

This is a sad, tragic case.

Citizens of the United States, residents of the City of Detroit and the Detroit metropolitan area, by justice and, by law, are entitled to exact punishment from Mr. Hill. Mr. Hill committed a criminal offense, and realizes that he must face the consequences of his actions. The question presented is, how long should Mr. Hill be incarcerated as a first-time offender at the near age of sixty (60) years old? Is thirty six (36) months incarceration, then release from federal prison at sixty three (63) years of age, with several years of supervised release and the public stigma of being a Federally convicted felon, sufficient punishment for Mr. Hill's crime? Thirty six (36) months incarceration in a federal prison is more than ample punishment for Mr. Hill, for the

American public and the residents of the City of Detroit and the Detroit metropolitan area.

Regrettably, today is a long way from Mr. Hill's career accomplishment of being named the 2005 Public Risk Manager of the Year. Obviously, through hard work, persistence and a dedicated application of his intellect, Mr. Hill proved to himself, and to others, the accomplishments he could attain. This was a high point in Mr. Hill's career, which admittedly fed his sense of self-importance and blindful-pride. Mr. Hill acknowledges that he became victim of his own human frailties, especially pride. Mr. Hill's self-recognition of how his pride took him in the wrong direction, is a significant rehabilitative step.

After serving thirty six (36) months in a federal prison, he will emerge sixty three (63) years old, unemployed, unemployable, financially ruined and a publicly known convicted Federal felon. What Mr. Hill has done cannot be undone. The nature of Mr. Hill's involvement in this offense makes it clear that no greater punishment is necessary to protect the public from his further crimes; nor is a longer sentence required to provide deterrence, needed educational, vocational training or psychological care.

Respectfully submitted,

By: /s/BRIAN M. LEGGHIO
Attorney for Defendant STEPHEN HILL
134 Market Street
Mt. Clemens, MI 48043-1740
Office: (586) 493-7000
Facsimile: (586) 493-1177
blegghio@legghiolaw.com

Date: September 14, 2011

11

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,         CASE NO. 10-cr-20202-PDM-VMM
                                 HON. PAUL D. BORMAN

vs.

STEPHEN HILL, et al.,

        Defendant(s).

---

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2011, I electronically filed the foregoing Defendant Stephen Hill's Sentencing Memorandum with the Clerk of the Court, United States District Court for the Eastern District of Michigan, using the ECF system which will send notification of such filing to the following: AUSA John Engstrom, as well as to all other counsel of record.

        Respectfully submitted,

        BRIAN M. LEGGHIO

        <u>/s/BRIAN M. LEGGHIO (P29658)</u>
        Attorney for Defendant, STEPHEN HILL
        134 Market Street
        Mt. Clemens, MI 48043-1740
        Office:    (586) 493-7000
        Facsimile:    (586) 493-1177
        blegghio@legghiolaw.com